**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT WAYNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: |
| v. | ) | |
| | ) | |
| THE WASHINGTON UNIVERSITY, | ) | |
| D/B/A WASHINGTON UNIVERSITY, | ) | |
| | ) | |
| Serve at: | ) | |
| The Office of the Executive Vice | ) | |
| Chancellor and General Counsel | ) | |
| 1 Brookings Drive | ) | |
| Saint Louis, Missouri 63130 | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Robert Wayne ("Plaintiff"), by and through undersigned counsel, and for his Complaint against The Washington University, doing business as Washington University ("Defendant"), states as follows:

## NATURE OF THE CLAIM

1.      Plaintiff brings this action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Section 623, *et. seq.,* to challenge Defendant's unlawful discrimination based on age, and pursuant to the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, *et. seq.,* as amended by the Civil Rights Act of 1991 ("Title VII"), to challenge Defendant's unlawful discrimination based on gender.

2.      Plaintiff also brings this action pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. Section 2601, *et. seq.*, to challenge Defendant's termination of his employment because he exercised rights to which he is entitled under the FMLA.

1

3.     Plaintiff also brings this action pursuant to the Missouri Human Rights Act ("MHRA"), Section 213.055, *et. seq.*, RSMo, to challenge Defendant's unlawful discrimination based on age and gender.

4.     Plaintiff further seeks relief for retaliation he suffered as a result of reporting the unlawful discrimination and harassment.

5.     Plaintiff also forwards claims based on Defendant's actions in harassing and subjecting Plaintiff to a hostile work environment, despite Plaintiff's complaints thereof, due to his age and gender.

## PARTIES

6.     Plaintiff is a resident of St. Louis County, Missouri and is a citizen of the United States of America.

7.     At all times relevant herein, Plaintiff was employed by Defendant in St. Louis County, State of Missouri, and in the Eastern Division of the Eastern District of Missouri.

8.     Plaintiff was employed by Defendant from March 21, 2011 to October 12, 2023.

9.     Plaintiff primarily performed his employment duties for Defendant from Defendant's offices located at 6615 Shepley Drive, Clayton, MO 63105.

10.    Defendant is a Missouri benevolent corporation with twenty (20) or more employees and with its principal place of business located at 1 Brookings Drive, Saint Louis, Missouri 63130.

## VENUE

11.    Venue is proper in this Court as the events giving rise to the claim occurred in this judicial district.  28 U.S.C. Section 1391(b).

## JURISDICTION

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343.  Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide any claims arising under state law pursuant to 28 U.S.C. Section 1367 as Plaintiff's state law claims are so related to his Federal claims that they form part of the same case or controversy.

13.     Plaintiff timely filed a Charge of Discrimination ("Plaintiff's Charge of Discrimination") against Defendant jointly with the Missouri Commission on Human Rights ("MCHR") and the U.S. Equal Employment Opportunity Commission ("EEOC") on March 12, 2024.  A copy of Plaintiff's Charge of Discrimination is attached hereto as Exhibit 1 and hereby incorporated by reference as though fully set forth herein.

14.     On September 27, 2024, the EEOC issued Plaintiff its Dismissal and Notice of Rights, allowing Plaintiff to file this matter under Federal law.  A copy of the EEOC Dismissal and Notice of Rights is attached hereto as Exhibit 2 and hereby incorporated by reference as though fully set forth herein.

15.     On December 19, 2024, the MCHR issued Plaintiff its Notice of Right to Sue, allowing Plaintiff to file this matter under State law.  A copy of the MCHR Notice of Right to Sue is attached hereto as Exhibit 3 and hereby incorporated by reference as though fully set forth herein.

16.     Plaintiff brings this cause of action within ninety (90) days following his receipt of the Notice of Right to Sue from the EEOC and from the MCHR and has exhausted all required administrative remedies.

## FACTS APPLICABLE TO ALL COUNTS

17.     At all times relevant herein, Defendant is an employer as defined by the ADEA, in that it is an industry affecting commerce who has twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. (29 U.S.C. Section 630(b)).

18.     At all times relevant herein, Defendant is an employer as defined by Title VII in that it is engaged in an industry affecting commerce who has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. (42 U.S.C. Section 2000e(b)).

19.     At all times relevant herein, Defendant is an employer as defined by the FMLA, in that it is engaged in commerce or in an industry or activity affecting commerce, who employs fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year. (29 C.F.R. Section 825.104).

20.     At all times relevant herein, Defendant is an employer as defined by the MHRA, in that it is engaged in an industry affecting commerce who has six (6) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. (Section 213.010(8) RSMo.).

21.     Angela Coonce ("Coonce") was hired as Chief of Police of Defendant's Police Department in August of 2022, with the ability to supervise, discipline, and discharge employees.

22.     At all times relevant herein, Plaintiff was a commissioned law enforcement officer.

23.     Plaintiff was employed at Defendant's Police Department from March 21, 2011 until his employment was terminated on October 12, 2023.

24.     Plaintiff was employed by Defendant as a Police Officer from March 21, 2011 – April 3, 2012, as a Liaison Police Officer to campus, responsible for Greek and residential life from April 4, 2012 – July of 2013, as a Sergeant responsible for crime prevention and special events from July of 2013 – January 12, 2019, and as a Lieutenant from January 13, 2019 until the termination of his employment on October 12, 2023.

25.     During Plaintiff's employment, he consistently performed his job duties in a satisfactory manner, received positive employment evaluations and multiple commendations, and never had any disciplinary actions until Coonce was hired.

26.     Plaintiff has over thirty-five (35) years of experience in law enforcement, including working for the police departments of the City of Berkeley, Missouri and the City of Ballwin, Missouri, which he worked at for twenty-one (21) years and retired at the rank of Lieutenant.

27.     After Coonce was hired as Chief of Police, rather than meeting with Plaintiff or other members of Defendant's Police Department command staff to provide direction or discuss her expectations, Coonce chose to communicate via email after an issue had occurred and tell officers what she had "expected."

28.     Coonce's emails were frequently hostile and demeaning.

29.     Within the first two (2) months after Coonce was hired, one (1) male Lieutenant resigned, and in December 2022 one (1) female Lieutenant retired.

30.     At that point, Plaintiff was the only Lieutenant remaining in Defendant's Police Department for a period of time, which resulted in a significant increase in responsibility for Plaintiff.

31.     On or about May 2, 2023, Coonce promoted Antonio Hubbard ("Hubbard") to the rank of Lieutenant.

32.     Hubbard was substantially younger than Plaintiff, with a decade less experience in law enforcement.

33.     Hubbard was treated more favorably than Plaintiff and others similarly situated to Plaintiff in age.

34.     Coonce stated she did not want to fill the third lieutenant position.

35.     On or about May 18, 2023, Plaintiff's direct supervisor, Captain Dave Goodwin ("Goodwin") filed a formal grievance against Coonce for creating a toxic environment, violating Defendant Police Department's and Defendant's discipline policies, violating Defendant's Code of Ethics, violating Defendant Police Department's CORE Value of Community Collaboration, violating Defendant Police Department's Law Enforcement Code of Ethics, and violating Defendant Police Department's rules regarding Respect for Others and Conduct which impairs the operations/effectiveness of the department.

36.     In his grievance, Goodwin provided a multitude of specific examples regarding how Coonce had targeted both him and Plaintiff as well as other males over fifty (50) years of age within the Defendant Police Department.

37.     Kevin Pelzel ("Pelzel"), a Human Resources Consultant with Defendant's Human Resources Department, conducted an alleged investigation of Goodwin's grievance.

38.     Pelzel interviewed Plaintiff as part of the investigation, and Plaintiff informed him about the gender and age-based discriminatory treatment that he, Goodwin and others were experiencing.

39.     Plaintiff suggested that Pelzel speak to other officers within the Defendant Police Department and informed Pelzel that everyone was fearful of retaliation from Coonce.

40.    Pelzel issued his findings via a Memorandum to Goodwin dated June 27, 2023, in which he stated that he was not able to substantiate a violation by Defendant or of Defendant Police Department policy.

41.    The Memorandum also stated, "Be advised that University policy prohibits any type of retaliation against individuals who have filed a complaint or who have participated in an investigation of a complaint."

42.    Despite this notification, Plaintiff and Goodwin were then subjected to multiple instances of retaliation by Coonce, which ultimately led to Goodwin's constructive discharge on October 6, 2023, and the termination of Plaintiff's employment less than a week later on October 12, 2023.

43.    Throughout Plaintiff's employment, Coonce provided no constructive feedback to Plaintiff or other members of the command staff.

44.    Then, after complaining about unlawful discrimination to Human Resources, Plaintiff was no longer given meaningful tasks and he was given the worst assignments that often included fixing issues that had been improperly handled by other officers in an effort to keep him too busy to do his own job.

45.    Plaintiff was also left off of e-mails and left out of decisions regarding matters that directly impacted his job, including sergeant promotions and officer assignments.

46.    Plaintiff's office was also moved from a private office to a much smaller room with no windows and limited privacy that he had to share with another lieutenant.

47.    Plaintiff's achievements were no longer recognized.

48.     Plaintiff and Sgt. Geoff Himstedt ("Himstedt") physically built and painted a Washington University Police Department booth at the annual ThurtenE Carnival, but neither received any recognition or acknowledgement for doing so.

49.     Plaintiff was no longer included in meetings on CCTV/license plate readers.

50.     Even though Plaintiff is a certified instructor in Active Shooter Instruction through the National Tactical Officers Association, he was not included in the department training other than to assist with logistics.

51.     On June 28, 2023, Goodwin conducted Plaintiff's annual performance appraisal.

52.     Plaintiff received a rating of "More than Satisfactory" in each of the five (5) rated categories of "Effective Management of Business," Professional Knowledge," "Decision Making/Problem Solving," "Leadership" and "Communication."

53.     The appraisal was forwarded to Coonce on June 29, 2023, but she failed to sign it until two (2) months later on August 23, 2023, causing Plaintiff to become concerned about how his complaints of unlawful discrimination were impacting Coonce's perception of his performance and handling of his written performance appraisal.

54.     Hubbard's annual performance appraisal was signed and returned immediately.

55.     Plaintiff's concerns became a reality when, on or about August 18, 2023, Coonce initiated two (2) highly unusual Internal Affairs ("IA") investigations in which she questioned the way Plaintiff supervised calls for service on August 9, 2023 and August 16, 2023.

56.     Instead of assigning Police Department staff, Coonce assigned the IA investigations to Human Resources for investigation.

57.     Unlike other investigations, no law enforcement employees were involved in assessing Plaintiff's supervision of calls for service for either IA investigation.

8

58.    On or about August 22, 2023, Plaintiff was verbally counseled at the direction of Coonce, for what she allegedly perceived as Plaintiff not being prepared for roll call during his shifts on August 18, 2023 and August 21, 2023.

59.    Plaintiff explained to his superior Goodwin that Coonce's allegations were not true, explained why they were not true and stated that he had simply not conducted roll call in the same manner as Coonce would.

60.    In response, Goodwin relayed Coonce's expectations for the first time of being present, prepared and alert, and Plaintiff confirmed that he understood those expectations and would follow them.

61.    On or about September 9, 2023, Coonce initiated two (2) additional IA investigations (totaling four (4) IA investigations).

62.    In the third of said IA investigations, Coonce alleged that a call for service was mishandled on September 1, 2023, and assigned the matter to Defendant Police Department Professional Standards for investigation.

63.    In the fourth of said IA investigations, Coonce alleged that Plaintiff had failed to follow a direct order from her that was given almost a year earlier, on October 4, 2022, instructing Plaintiff to have monthly meetings with a subordinate employee.  Coonce assigned this matter to Human Resources for investigation.

64.    On September 18, 2023, before the investigations of the third and fourth IA complaints were concluded, Plaintiff was issued a "Written Reprimand/Final Warning" regarding the earlier two (2) IA investigations that were initiated on August 18, 2023.

65.     Pursuant to Defendant and Defendant Police Department policies, this level of discipline was not appropriate as Plaintiff had no disciplinary actions taken against him in the

previous twelve (12) years prior to the verbal counseling he received on August 22, 2023, one (1) day prior to his "More than Satisfactory" performance review.

66.    When Plaintiff received the Written Reprimand/Final Warning, Hubbard (the much younger lieutenant that Coonce had promoted), who was actually in charge of the officers that responded to one of the calls at issue, received no disciplinary action.

67.    Sgt. Dave Habermaas ("Habermaas"), who is over fifty (50) years of age, was the Sergeant on duty for said call.

68.    Similar to Plaintiff, Habermaas received a Written Reprimand/Final Warning.

69.    Habermaas was thereafter forced into retirement a few months later.

70.    Later in the day on September 18, 2023, while off duty and having worked the night shift, Plaintiff was interviewed by Assistant Director, Employee Relations, Nannette Vaughn ("Vaughn") regarding the later two (2) IA investigations that were initiated on September 9, 2023.

71.    During the interview, Plaintiff complained to Vaughn about the unlawful gender and age based discriminatory and retaliatory treatment that he and others were being subjected to by Coonce.

72.    This was Plaintiff's second complaint to Human Resources, and he again recommended that interviews of other members of the Defendant Police Department should be conducted.

73.    Vaughn's interview notes documented that Human Resources is not the decision-maker regarding disciplinary actions.

74.    Vaughn also documented, "Lieutenant Wayne discussed his frustration with the way issues are handled lately regarding the patrol team.  He expressed feeling tired as he had been working night shift and staying all day today.  <u>Lt. Wayne disclosed that he received corrective</u>

10

action earlier today for another situation and asked if HR makes decisions of corrective action. I informed him that HR is not the decision maker. He expressed understanding. Lt. Wayne was advised that he could appeal his corrective action both at the department level and the university level. Nannette also advised that if he was not well, he could potentially take FMLA if he had a serious health condition."

75.     Prior to receipt of the Written Reprimand/Final Warning, Plaintiff considered applying to transfer into another job with Defendant due to the stress caused by Coonce.

76.     However, his receipt of the Written Reprimand/Final Warning now made Plaintiff ineligible for any other positions with Defendant at that time.

77.     On September 26, 2023, Plaintiff submitted an appeal to the Written Reprimand/Final Warning he had received on September 18, 2023 to Senior Director of Compliance, Sara Wright ("Wright").

78.     On or about October 4, 2023, Plaintiff discussed his appeal with Wright and, for the third time, complained about the discriminatory and retaliatory conduct by Coonce and suggested that others be interviewed.

79.     Plaintiff never received any further response about his complaints nor did he receive a determination of his appeal.

80.     On September 21, 2023, Plaintiff was involved in an automobile accident on his way to work.

81.     As a result of said accident and at the direction of his physician, Plaintiff requested leave under the FMLA.

82.     Goodwin, Coonce and Human Resources were well aware of Plaintiff's request and need for FMLA.

83.    Despite that knowledge, approval of his FMLA request was delayed, forcing him to continue working for fear of being fired for failing to perform his duties.

84.    On October 10, 2023, Plaintiff's leave was approved, and he began his FMLA leave at the approval and direction of Human Resources.

85.    On October 11, 2023, while on FMLA leave, Plaintiff received e-mails and texts regarding his requirement to attend a mandatory meeting with Coonce on October 12, 2023.

86.    Prior to the mandatory meeting, on October 12, 2023 at 1:36 a.m., Plaintiff submitted a written complaint to four (4) employees of the Human Resources Department via email for violation of the FMLA policy.

87.    Despite his multiple complaints of unlawful discrimination and retaliation, Defendant never investigated the allegations Plaintiff reported.

88.    Instead, on October 12, 2023 at 10:00 a.m., Coonce terminated Plaintiff's employment.

89.    Himstedt was appointed as Interim Lieutenant following Plaintiff's termination.

90.    Himstedt was subsequently demoted after he filed a complaint of discriminatory conduct because he was not being properly compensated for the Interim position.

91.    After making his complaint, Coonce met with Himstedt and told him he was not going to be promoted to the Lieutenant position.

92.    Plaintiff was ultimately replaced by a substantially younger female, Nicole Gentinili ("Gentinili").

93.    Police officer Darmon Swanson ("Swanson") went through the promotional process for Sergeant and was bypassed by Coonce, who promoted four (4) others including two (2) substantially younger officers with much less experience than Swanson.

94.     Coonce has a lengthy history of discriminatory and retaliatory behavior against subordinates and has been sued on at least two (2) occasions.

95.     One of such lawsuits details facts regarding Coonce's discriminatory conduct toward male employees and asserts that Coonce was associated with a group of females within the Department known as "the Lesbian mafia," whom Coonce was known to advance, not based upon their knowledge, skills and abilities, but based upon their gender and sexual orientation.

## COUNT I - AGE DISCRIMINATION IN VIOLATION OF THE ADEA

96.     Plaintiff incorporates and realleges paragraphs 1 through 95 by reference, as if fully set forth herein.

97.     Plaintiff was born in 1965, and at all times relevant herein, Plaintiff was more than forty (40) years of age and is a person entitled to the legal protections against age discrimination, as set forth in the ADEA.

98.     As set forth above, Plaintiff was discriminated against and harassed because of his age in violation of the ADEA.

99.     At all times relevant herein, Plaintiff was qualified for his job and met Defendant's legitimate job expectations.

100.     After Coonce became Defendant's Chief of Police, Plaintiff experienced adverse employment actions from Defendant, including reassignment of job duties, subjection to IA investigations (some of which were handled by non-law enforcement personnel), counseling, written reprimands, exclusion from e-mails and decision making, moving him from a private office to a smaller room with limited privacy, neither recognizing nor acknowledging his achievements, exclusion from meetings and department trainings, and ultimately termination of employment.

101.     Younger, similarly situated employees were treated more favorably than Plaintiff.

13

102.    Defendant's conduct constitutes intentional discrimination on the basis of age, with malice and/or disregard of Plaintiff's known rights.

103.    Defendant's conduct constitutes disparate treatment and intentional discrimination of Plaintiff based on age.

104.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer lost wages and benefits of employment.

105.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer emotional distress and mental anguish.

106.    As a result of Defendant's conduct and actions, Plaintiff has incurred attorneys' fees and costs of litigation and will continue to incur such fees and costs.

WHEREFORE, Plaintiff prays this Court, after trial by jury, enter judgment for Plaintiff and against Defendant, for Plaintiff's lost wages and benefits of employment; for prejudgment interest on same; for future lost wages and benefits; for damages for Plaintiff's past and future emotional distress and mental anguish; for liquidated damages; for attorneys' fees and costs of litigation, and for such other relief that this Court deems just and proper.

## COUNT II - UNLAWFUL HARASSMENT ON BASIS OF AGE IN VIOLATION OF THE ADEA

107.    Plaintiff incorporates and realleges paragraphs 1 through 106 by reference, as if fully set forth herein.

108.    Plaintiff was born in 1965, and at all times relevant herein, Plaintiff was more than forty (40) years of age and is a person entitled to legal protections against age discrimination, as set forth in the ADEA.

109.    During Plaintiff's employment, Plaintiff was subjected to unwelcome harassment from Defendant on the basis of age including reassignment of job duties, subjection to IA

14

investigations (some of which were handled by non-law enforcement personnel), counseling, written reprimands, exclusion from e-mails and decision making, moving him from a private office to a smaller room with limited privacy, neither recognizing nor acknowledging his achievements, exclusion from meetings and department trainings, and ultimately his termination of employment.

110.    Plaintiff's age was a motivating factor in the harassment he was subjected to by Coonce and Defendant, which were motivated (in part) to force Plaintiff to retire.

111.    In addition to Coonce's harassment resulting in a tangible employment action, the harassment was sufficiently severe and pervasive that it affected a term, condition or privilege of Plaintiff's employment and created an objectively intimidating, hostile, or offensive work environment.

112.    Defendant knew or should have known about the harassment to which he was subjected and failed to take proper action.

113.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer lost wages and benefits of employment.

114.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer emotional distress and mental anguish.

115.    As a result of Defendant's conduct and actions, Plaintiff has incurred attorneys' fees and costs of litigation and will continue to incur such fees and costs.

WHEREFORE, Plaintiff prays this Court, after trial by jury, enter judgment for Plaintiff and against Defendant, for Plaintiff's lost wages and benefits of employment; for prejudgment interest on same; for future lost wages and benefits; for damages for Plaintiff's past and future emotional distress and mental anguish; for liquidated damages; for attorneys' fees and costs of litigation, and for such other relief that this Court deems just and proper.

## COUNT III - RETALIATION IN VIOLATION OF THE ADEA

116.    Plaintiff incorporates and realleges paragraphs 1 through 115 by reference, as if fully set forth herein.

117.    Plaintiff was born in 1965, and at all times relevant herein, Plaintiff was more than forty (40) years of age and is a person entitled to the legal protections against age discrimination, as set forth in the ADEA.

118.    During Plaintiff's employment, Plaintiff engaged in ADEA-protected activity where he repeatedly complained to members of Defendant's Human Resources Department about the discriminatory treatment he, Goodwin and other male employees over the age of fifty (50) were experiencing.

119.    As a result of and in retaliation for engaging in the protected activities, Plaintiff was subjected to adverse employment actions including reassignment of job duties, subjection to IA investigations (some of which were handled by non-law enforcement personnel), counseling, written reprimands, exclusion from e-mails and decision making, moving him from a private office to a smaller room with limited privacy, neither recognizing nor acknowledging his achievements, exclusion from meetings and department trainings, and ultimately his termination of employment.

120.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer lost wages and benefits of employment.

121.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer emotional distress and mental anguish.

122.    As a result of Defendant's conduct and actions, Plaintiff has incurred attorneys' fees and costs of litigation and will continue to incur such fees and costs.

WHEREFORE, Plaintiff prays this Court, after trial by jury, enter judgment for Plaintiff and against Defendant, for Plaintiff's lost wages and benefits of employment; for prejudgment interest on same; for future lost wages and benefits; for damages for Plaintiff's past and future emotional distress and mental anguish; for liquidated damages; for attorneys' fees and costs of litigation, and for such other relief that this Court deems just and proper.

## COUNT IV - GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

123.    Plaintiff hereby fully incorporates and realleges paragraphs 1 through 122 by reference, as if fully set forth herein.

124.    Plaintiff's gender is male, and he is a person entitled to the legal protections against gender discrimination under Title VII.

125.    Plaintiff was discriminated against and harassed because of his gender in violation of Title VII, which prohibits discrimination against any person with respect to terms, conditions or privileges of employment and prohibits retaliatory conduct for participating in protected activity.

126.    At all times relevant herein, Plaintiff was qualified to do his job and met Defendant's legitimate job expectations.

127.    Plaintiff suffered adverse employment action from Defendant on the basis of gender, including reassignment of job duties, subjection to IA investigations (some of which were handled by non-law enforcement personnel), counseling, written reprimands, exclusion from e-mails and decision making, moving him from a private office to a smaller room with limited privacy, neither recognizing nor acknowledging his achievements, exclusion from meetings and department trainings, and ultimately his termination of employment.

128.    Female employees were treated more favorably than Plaintiff.

129.    Defendant's conduct constitutes intentional discrimination on the basis of gender, with malice and/or disregard for Plaintiff's known rights.

130.    Defendant's conduct constitutes disparate treatment and intentional discrimination of Plaintiff based on gender.

131.    The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff and others similarly situated, and reflected a conscious indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages.

132.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer lost wages and benefits of employment.

133.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer emotional distress and mental anguish.

134.    As a result of Defendant's conduct and actions, Plaintiff has incurred attorneys' fees and costs of litigation and will continue to incur such fees and costs.

WHEREFORE, Plaintiff prays this Court, after trial by jury, enter judgment for Plaintiff and against Defendant, for Plaintiff's lost wages and benefits of employment; for prejudgment interest on same; for future lost wages and benefits; for damages for Plaintiff's past and future emotional distress and mental anguish; punitive damages; for attorneys' fees and costs of litigation, and for such other relief that this Court deems just and proper.

### COUNT V – UNLAWFUL HARASSMENT ON BASIS OF GENDER IN VIOLATION OF TITLE VII

135.    Plaintiff incorporates and realleges paragraphs 1 through 134 by reference, as if fully set forth herein.

136.    Plaintiff's gender is male, and he is a person entitled to the legal protections against gender discrimination under Title VII.

18

137.   During Plaintiff's employment, Plaintiff was subjected to unwelcome workplace harassment including reassignment of job duties, subjection to IA investigations (some of which were handled by non-law enforcement personnel), counseling, written reprimands, exclusion from e-mails and decision making, moving him from a private office to a smaller room with limited privacy, neither recognizing nor acknowledging his achievements, exclusion from meetings and department trainings, and ultimately his termination of employment.

138.   The harassment to which Plaintiff was subjected was based on Plaintiff's gender.

139.   In addition to Coonce's harassment resulting in a tangible employment action, the harassment was sufficiently severe and pervasive, that a term, condition or privilege of Plaintiff's employment was affected by said harassment.

140.   The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff and others similarly situated, and reflected a conscious indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

141.   Defendant had knowledge of the harassment and failed to take prompt remedial action.

WHEREFORE, Plaintiff prays this Court, after trial by jury, enter judgment for Plaintiff and against Defendant, for Plaintiff's lost wages and benefits of employment; for prejudgment interest on same; for future lost wages and benefits; for damages for Plaintiff's past and future emotional distress and mental anguish; punitive damages; for attorneys' fees and costs of litigation, and for such other relief that this Court deems just and proper.

## COUNT VI – RETALIATION IN VIOLATION OF TITLE VII

142.   Plaintiff incorporates and realleges paragraphs 1 through 141 by reference, as if fully set forth herein.

143.    Title VII makes it unlawful for an employer to retaliate against an employee who has opposed an unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

144.    By its conduct alleged herein, Defendant subjected Plaintiff to unlawful retaliation in violation of Title VII by reassignment of job duties, subjection to IA investigations (some of which were handled by non-law enforcement personnel), counseling, written reprimands, exclusion from e-mails and decision making, moving him from a private office to a smaller room with limited privacy, neither recognizing nor acknowledging his achievements, exclusion from meetings and department trainings, and ultimately his termination of employment.

145.    Plaintiff engaged in protected conduct as described above.

146.    Plaintiff was thereafter subjected to adverse employment actions, as set forth herein.

147.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer lost wages and benefits of employment.

148.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer emotional distress and mental anguish.

149.    As a result of Defendant's conduct and actions, Plaintiff has incurred attorneys' fees and costs of litigation and will continue to incur such fees and costs.

150.    The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff and others similarly situated, and reflected a conscious indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff prays this Court, after trial by jury, enter judgment for Plaintiff and against Defendant, for Plaintiff's lost wages and benefits of employment; for prejudgment

interest on same; for future lost wages and benefits; for damages for Plaintiff's past and future emotional distress and mental anguish; for punitive damages; for attorneys' fees and costs of litigation, and for such other relief that this Court deems just and proper.

## COUNT VII - VIOLATION OF THE FMLA

151.    Plaintiff incorporates and realleges paragraphs 1 through 150 by reference, as if fully set forth herein.

152.    Plaintiff suffered a shoulder injury following an automobile accident in September 2023, resulting in a serious health condition.

153.    Thereafter, Plaintiff applied for and began to take an unpaid leave from work under the FMLA due to his own serious health condition.

154.    On the day after his FMLA leave began, Defendant terminated Plaintiff's employment.

155.    Plaintiff's request to take unpaid leave from work due to his serious health condition under the FMLA had a causal connection to Defendant's decision to terminate him.

156.    Plaintiff suffered an adverse employment action by way of his employment termination in interference of his FMLA rights and in direct retaliation for having taken FMLA leave.

157.    Defendant's actions were taken in bad faith and Defendant had no reasonable grounds to believe that Plaintiff's termination was lawful.

158.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer lost wages and benefits of employment.

159.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer emotional distress and mental anguish.

160.    As a result of Defendant's conduct and actions, Plaintiff has incurred attorneys' fees and costs of litigation and will continue to incur such fees and costs.

WHEREFORE, Plaintiff prays this Court, after trial by jury, enter judgment for Plaintiff and against Defendant, for Plaintiff's lost wages and benefits of employment; for prejudgment interest on same; for future lost wages and benefits; for liquidated damages for Defendant's bad faith FMLA violation; for attorneys' fees and costs of litigation, and for such other relief that this Court deems just and proper.

### COUNT VIII - AGE DISCRIMINATION IN VIOLATION OF THE MHRA

161.    Plaintiff incorporates and realleges paragraphs 1 through 160 by reference, as if fully set forth herein.

162.    Plaintiff was born in 1965, and at all times relevant herein, Plaintiff was more than forty (40) years of age and a person entitled to the legal protections against age discrimination, as set forth in the MHRA.

163.    Plaintiff's age was a motivating factor in Defendant's decision to reprimand Plaintiff, subject him to the adverse terms and conditions of employment described herein and ultimately terminate his employment.

164.    Defendant's conduct and actions violated Section 213.055 RSMo.

165.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer lost wages and benefits of employment.

166.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer emotional distress and mental anguish.

167.    As a result of Defendant's conduct and actions, Plaintiff has incurred attorneys' fees and costs of litigation and will continue to incur such fees and costs.

22

168.     Defendant's actions were outrageous and were taken with evil motive and reckless indifference to the rights of Plaintiff

WHEREFORE, Plaintiff prays this Court, after trial by jury, enter judgment for Plaintiff and against Defendant, for Plaintiff's lost wages and benefits of employment; for prejudgment interest on same; for future lost wages and benefits; for damages for Plaintiff's past and future emotional distress and mental anguish; punitive damages; for attorneys' fees and costs of litigation, and for such other relief that this Court deems just and proper.

## COUNT IX - GENDER DISCRIMINATION IN VIOLATION OF THE MHRA

169.     Plaintiff hereby fully incorporates and realleges paragraphs 1 through 168 by reference, as if fully set forth herein.

170.     Plaintiff's gender, male, was a motivating factor in Defendant's decision to reprimand Plaintiff, subject him to the adverse terms and conditions of employment described herein and ultimately to terminate his employment.

171.     Defendant's conduct and actions violated Section 213.055 RSMo.

172.     As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer lost wages and benefits of employment.

173.     As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer emotional distress and mental anguish.

174.     As a result of Defendant's conduct and actions, Plaintiff has incurred attorneys' fees and costs of litigation and will continue to incur such fees and costs.

175.     Defendant's actions were outrageous and were taken with evil motive and reckless indifference to the rights of Plaintiff

WHEREFORE, Plaintiff prays this Court, after trial by jury, enter judgment for Plaintiff and against Defendant, for Plaintiff's lost wages and benefits of employment; for prejudgment interest on same; for future lost wages and benefits; for damages for Plaintiff's past and future emotional distress and mental anguish; punitive damages; for attorneys' fees and costs of litigation, and for such other relief that this Court deems just and proper.

## COUNT X - UNLAWFUL HARASSMENT ON BASIS OF AGE IN VIOLATION OF THE MHRA

176.    Plaintiff incorporates and realleges paragraphs 1 through 175 by reference, as if fully set forth herein.

177.    Plaintiff was born in 1965, and at all times relevant herein, Plaintiff was more than forty (40) years of age and is a person entitled to the legal protections against age discrimination, as set forth in the MHRA.

178.    During Plaintiff's employment, and as set forth herein, Plaintiff was subjected to unwelcome harassment from Defendant, which (in part) resulted in a tangible employment action taken by Plaintiff's supervisor.

179.    Plaintiff's age was a motivating factor in the harassment.

180.    A term, condition or privilege of Plaintiff's employment was also affected by said harassment.

181.    Defendant knew or should have known of the harassment of Plaintiff and failed to take proper remedial action.

182.    Defendant's actions were outrageous and were taken with evil motive and reckless indifference to the rights of Plaintiff

WHEREFORE, Plaintiff prays this Court, after trial by jury, enter judgment for Plaintiff and against Defendant, for Plaintiff's lost wages and benefits of employment; for prejudgment

24

interest on same; for future lost wages and benefits; for damages for Plaintiff's past and future emotional distress and mental anguish; punitive damages; for attorneys' fees and costs of litigation, and for such other relief that this Court deems just and proper.

**COUNT XI – UNLAWFUL HARASSMENT ON BASIS OF
GENDER IN VIOLATION OF THE MHRA**

183.    Plaintiff incorporates and realleges paragraphs 1 through 182 by reference, as if fully set forth herein.

184.    Plaintiff is a male and is a person entitled to the legal protections against gender discrimination, as set forth in the MHRA.

185.    During Plaintiff's employment, and as set forth herein, Plaintiff was subjected to unwelcome harassment from Defendant, which (in part) resulted in a tangible employment action taken by Plaintiff's supervisor.

186.    Plaintiff's gender was a motivating factor in the harassment.

187.    A term, condition or privilege of Plaintiff's employment was also affected by said harassment.

188.    Defendant knew or should have known of the harassment and failed to take proper remedial action.

189.    Defendant's actions were outrageous and were taken with evil motive and reckless indifference to the rights of Plaintiff

WHEREFORE, Plaintiff prays this Court, after trial by jury, enter judgment for Plaintiff and against Defendant, for Plaintiff's lost wages and benefits of employment; for prejudgment interest on same; for future lost wages and benefits; for damages for Plaintiff's past and future emotional distress and mental anguish; punitive damages; for attorneys' fees and costs of litigation, and for such other relief that this Court deems just and proper.

## <u>COUNT XII - RETALIATION IN VIOLATION OF THE MHRA</u>

190.    Plaintiff incorporates and realleges paragraphs 1 through 189 by reference, as if fully set forth herein.

191.    Plaintiff complained or otherwise opposed discrimination of himself and others similarly situated.

192.    Defendant took adverse action against Plaintiff.

193.    Plaintiff's complaint or opposition to discrimination of himself and others similarly situated had a causal connection to Defendant's decision to reprimand Plaintiff, subject him to the adverse terms and conditions of employment described herein and ultimately terminate his employment.

194.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer lost wages and benefits of employment.

195.    As a result of Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer emotional distress and mental anguish.

196.    As a result of Defendant's conduct and actions, Plaintiff has incurred attorneys' fees and costs of litigation and will continue to incur such fees and costs.

197.    Defendant's actions were outrageous and were taken with evil motive and reckless indifference to the rights of Plaintiff.

WHEREFORE, Plaintiff prays this Court, after trial by jury, enter judgment for Plaintiff and against Defendant, for Plaintiff's lost wages and benefits of employment; for prejudgment interest on same; for future lost wages and benefits; for damages for Plaintiff's past and future emotional distress and mental anguish; punitive damages; for attorneys' fees and costs of litigation, and for such other relief that this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues so triable, pursuant to Rule 38 of the

Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C.

Section 1981a and pursuant to the Missouri Human Rights Act.

Respectfully submitted,

**HESSE GRAVILLE, LLC**

By: _____

Daniel J. Doetzel, #46788(MO)
13354 Manchester Road, Suite 210
Des Peres, MO 63131
(314) 862-6542 – Telephone
(636) 778-9812 – Facsimile
dandoetzel@hgstl.com

*Attorney for Plaintiff*