IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT WAYNE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:24-cv-01723-JMD |
| THE WASHINGTON UNIVERSITY, | ) |
| D/B/A WASHINGTON UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

**JOINT MOTION OF UNDISPUTED FACTS**

Pursuant to this Court's June 2026 Requirements, the undersigned counsel on behalf of Plaintiff Robert Wayne and Defendant Washington University hereby submit a Joint Motion of Undisputed Facts in connection with the University's Motion for Summary Judgment. The undisputed facts set out below are those admitted without qualification by each party in response to the other party's Statement of Uncontroverted Material Facts ("SUMF"). **In submitting this Joint Motion neither party waives its argument that there are no genuine issues of material fact with respect to the truth of other assertions in their respective SUMFs that may have been denied or objected to by the opposing party.** Each party also specifically reserves any and all evidentiary objections at trial with respect to the facts set forth below, including objections as to admissibility, materiality, relevance and any other objections that may be applicable.

The parties state that the following facts are undisputed as they have been admitted without qualification by the parties:

**A. Background, Employment History and Events Leading to Termination**

1.      Plaintiff Robert Wayne is a former Washington University ("Washington University" or "University") Police Officer.  (Ex. 1 - Aff. of Robert Wayne, ¶2). [WAYNE SUMF, ¶1][1]

2.      Washington University hired Wayne on March 23, 2011 as a Deputized Police Officer.  (Ex. 1, ¶5; Ex. 2 – Wayne Offer Letter (WU-0000946)).  [WAYNE SUMF, ¶4]

3.      Wayne worked as a Deputized Police Officer until June 27, 2013, when he was promoted to Sergeant.  (Ex. 1, ¶6; Ex. 3 – June 27, 2013 Personnel Order 13-14 (WU-0000991)). [WAYNE SUMF, ¶5]

4.      On January 4, 2019, Wayne was promoted to Lieutenant within the Washington University Police Department.  (Ex. 4 – January 4, 2019 Personnel Order 19-01 (WU-0000961)). [WAYNE SUMF, ¶6]

5.      At the time Wayne was promoted to Lieutenant, Mark Glenn was the Chief of Police for the WUPD.  Ex. A (Wayne Dep. 27:6-9).  [WU SUMF, ¶4]

6.      Wayne worked as Lieutenant in the Washington University Police Department until his employment was terminated on October 12, 2023.  (Ex. 1, ¶8; Ex. 5 – [October] 12, 2023 Termination Letter (WU-0000888)). [WAYNE SUMF, ¶7]

7.      On August 1, 2022, Washington University hired Chief Angela Coonce ("Coonce") as Chief of Police.  (Doc #53-2 ("Coonce Depo") 17:13-17). [WAYNE SUMF, ¶10]

8.      Prior to her employment with the University, Chief Coonce worked for the City of St. Louis Police Department for twenty-four (24) years.  (Doc #53-2, Coonce Depo 17:18-21). [WAYNE SUMF, ¶11]

---

[1] The reference in brackets after each undisputed fact herein is to the corresponding paragraph in either Plaintiff's ("WAYNE") or Defendant's ("WU") Statement of Uncontroverted Material Facts previously filed with the Court.

9.      Chief Coonce was born on August 28, 1970 and was 52 years old when she began her employment with the WUPD.  Ex. B (Coonce Dep. 9:9-13; 17:13-17). [WU SUMF, ¶6]

10.     At the time Chief Coonce was hired by the WUPD, Plaintiff was 56 years old. Complaint, ¶97. [WU SUMF, ¶7]

11.     In Chief Coonce's first month on the job, one of the University's administrators, Dr. Shantay Bolton, was confronted outside her home by an unknown and suspicious man who exited a vehicle that had been driving erratically. Coonce Aff.,¶5. [WU SUMF, ¶9]

12.     On October 3, 2022, Chief Coonce sent an email to the WUPD command staff stating that she "want[ed] monthly vehicle inspections conducted of all vehicles in the fleet by a supervisor and commander[]," and that "[a]n inspection memo should be sent to me the last Friday of each month with findings."  Ex. F (WU-0000067). [WU SUMF, ¶14]

13.     On October 13, 2022, Chief Coonce communicated expectations to the WUPD command staff in an email that stated in part:  "It's the command staff's responsibility to lay out [] expectations and to hold officers accountable."  Ex. D (Dep. Ex. 55). [WU SUMF, ¶12]

14.     In an email dated November 1, 2022, Chief Coonce informed Wayne and WUPD Captain Dave Goodwin ("Captain Goodwin") by email:  "I still have not received a memorandum from you with the monthly vehicle audit that was due on Friday, October 28th."  *Id.*  [WU SUMF, ¶15]

15.     In an email to Plaintiff and Captain Goodwin dated November 15, 2022, Chief Coonce wrote:

I am still waiting for memorandums that I had requested over two weeks ago.

3

After the active shooter training at South Campus, you asked for a meeting in my office to discuss a very concerning matter. We met in my office and you advised me that during the training two WUPD Officers verbally indicated that they would not follow active shooter protocol. Specifically you advised that the officers stated they wouldn't enter a building alone to stop a threat if there was an active shooter on campus.

The three of us found this quite concerning – for obvious reasons. I ask [sic] you to have both of the officers document and explain why they made these comments, as well as anyone else that heard them make the comments. You advised me verbally that the officers in question were PO [redacted] and PO [redacted], and that Sgt. Jackson and PO Moore had alerted you.

I advised you that this was very concerning to me and that if any WUPD Officer could not be counted on to enter a building on campus during an active shooter, that their employment at WashU might be in question.

I have yet to hear anything from either of you about this serious issue. I received memos from PO Don Moore about the WU24 training block and some officers/security guards that needed remedial training but none of the memos addressed this serious topic.

I want the memorandums completed by 10/22/22 [sic]; this will give you time to review and top sheet. I don't expect to have to provide you with formal deadlines for requests such as this moving forward. There should be a sense of urgency when I request memorandums and when you discover employee issues/concerns such as this one.

Ex. G (Dep. Ex. 43). [WU SUMF, ¶16]

16.      On May 18, 2023, Chief Coonce sent an email to Wayne and other command staff, with the subject "Expectations of Commanders", which stated in part:

As leaders at WUPD, I expect the command staff to immediately intervene when you observe employees not following policies and procedures – this should go without saying. As commanders, I expect you to lead by example. If you are in violation of a policy, how do you expect to get others at WUPD to follow it? As commanders, you are held to higher standards because of your rank and position.

\*\*\*

This is not a new phenomenon. There have been numerous times [in] the past 9 months that I have had to direct commanders to take action, to document incidents, to counsel subordinates, etc. We have discussed this in leadership meetings

4

regularly.   Being "proactive" is one of the core values of this department.  I expect you to be proactive and not wait for me to direct you to take action.

Ex. E (Dep. Ex. 39).  [WU SUMF, ¶13]

17.    The August 17, 2023 IAD [referral] included two (2) separate incidents relevant to Wayne. (Doc #53-9 - WU-0000263).  [WAYNE SUMF, ¶37]

18.    The investigations involved what Chief Coonce believed was the mishandling of calls for [Police Department] service in the Patrol Division.  (Doc #53-9 - WU-0000263). [WAYNE SUMF, ¶35]

19.    The Police Department supervisory staff, including Lieutenant Wayne, Captain Goodwin and Lieutenant A.H., were included in the investigations because of their role in overseeing the calls for service. (Doc #53-9 - WU-0000263).  [WAYNE SUMF, ¶36]

20.    The first incident, known as IAD #23-02, occurred on August 9, 2023 and involved a student who Officers allegedly failed to identify was wanted for an ex-parte order of protection involving a female student.  (Doc #53-9 - WU-0000263).  [WAYNE SUMF, ¶38]

21.    Chief Coonce testified regarding the history of C.T.:

We were having issues with a student who had been arrested by the University City Police Department and he had a restraining order against him.  He was by all accounts stalking another female student, and she had gotten a restraining order because she was fearful of him and for her safety.  And CT was the individual that had the restraining order and he was discovered on campus this night.

Ex. B (Coonce Dep. 59:13-20).  [WU SUMF, ¶23]

22.    Chief Coonce further testified regarding C.T.:

The following day I found out that there were actually two separate incidents that I was not aware of. This was the second incident. There was another encounter with him that I was not aware of, and I did find out that the officers had not run CT through the REJIS Criminal Justice database, and so when that happened the following day, we discovered that he did have a violation of a restraining order and that information was not discovered by the officers or Lieutenant Wayne the previous night after two separate encounters with him and he was taken into custody and arrested the following day.

*Id.* (Coonce Dep. 60:25-61:11).   [WU SUMF, ¶24]

23.     Wayne testified that if he or the other officers who had encountered C.T. on campus knew there was a warrant for his arrest, they would have arrested him.  Ex. A (Wayne Dep. 90:25-91:5).  [WU SUMF, ¶26]

24.     The Officers subjected to the IAD #23-02 investigation were Lieutenant Wayne, Captain Goodwin, Sergeant C.M., Corporal R.F., and Police Officer T.T. (Doc #53-9 - WU-0000263; Ex. 14 - IAD #23-02 (WU-0000279 – WU0000283)).  [WAYNE SUMF, ¶39]

25.     The second incident, known as IAD #23-04, occurred on August 16, 2023 and involved Officers allegedly failing to take action in connection with an individual [M.H.] making sexual comments to female students.  (Doc #53-9 WU-0000263; Ex. 15 – IAD #23-04 (WU-0000284 – WU-0000288)).  [WAYNE SUMF, ¶40]

26.     As Chief Coonce testified:

> Yes. So MH was the person involved in this incident. He was a chronic offender who suffers from mental health issues and is unhoused. He was at the time a chronic trespasser, and we were having repeat issues with him on campus. Clear[] instructions had been sent out and discussed at roll call about how to handle him if he came on the campus because we viewed him as a pretty serious safety risk to our students, faculty, and staff members.

> On this night on August 16, 2023, Lieutenant Wayne was the watch commander, which means he was the lieutenant on duty in charge of WUPD. And a call for service was received involving MH, and he had made sexually explicit comments to, I believe, an employee, I don't remember exactly who it was, on campus.  And officers responded and let him walk off campus without contact.

Ex. B (Coonce Dep. 62:13-63:4).  [WU SUMF, ¶31]

27.     When Chief Coonce learned about this incident, she wrote to Captain Goodwin:

> I am at a loss for words.  It is clear that these are not isolated incidents, there are systemic issues within the Patrol Division that are putting the University and WUPD at risk.
>
> Had the officers acted appropriately on this call for service, the "Sexual Misconduct" incident on Delmar may have been prevented.

Ex. O (Dep. Ex. 20).  [WU SUMF, ¶33]

28.     Chief Coonce believed the call for service involving M.H. was mishandled, and specifically with respect to Wayne, "he did not provide the oversight that [she] would expect of a commander to provide on this serious of a call."  Ex. B (Coonce Dep. 63:5-12).  . [WU SUMF, ¶34]

29.     Wayne testified that the call for service involving M.H. was not handled properly, and he agreed that it was an "example of complacency that could get someone hurt" and was "not consistent with the direction the department [wa]s going."  Ex. A (Wayne Dep. 109:1-110:17).  [WU SUMF, ¶55]

30.     The Officers subjected to the IAD #23-04 investigation were Lieutenant Wayne, Captain Goodwin, Corporal A.G., Sergeant D.H. and Police Officer D.M. (Ex. 15; Doc #53-9 - WU-0000263).  [WAYNE SUMF, ¶41]

31.     The investigations of IAD #23-02 and #23-04 were assigned to Nannette Vaughn, the University's Assistant Director, Employee Relations. (Doc #53-9 - WU-0000263). [WAYNE SUMF, ¶42]

32.     Ms. Vaughn interviewed Lieutenant Wayne on August 23, 2023 in connection with his involvement in the two (2) incidents.  (Ex. 16 - August 23, 2023 Interview Notes (WU-0000335 – WU-0000337).  [WAYNE SUMF, ¶43]

33.     On August 22, 2023, Wayne was verbally counseled by Captain Goodwin for failing to be prepared for roll call on August 18, 2023, and failure to attend roll call on August 21, 2023.  Ex. P (Dep. Ex. 47); Ex. B (Coonce Dep. 63:19-64:13).  [WU SUMF, ¶41]

34.     The 360 Degree Performance Appraisal feedback regarding Wayne included the following responses:

- Lt. Wayne should not be in any management position.  I will not use the term leader for him as he simply is in the position for his own gain.  He fails to recognize officers or motivate the team.  The only time he shows up at roll calls is for negative items.  It seems that he thrives on the negative and wants conflict.  Lt. Wayne fails to take action when issues with supervisors are brought to him and called on it, he claims he does not know about the issues.

- Bob Wayne does not know how to lead.  He creates a hostile and intimidating environment for work.  He rarely acknowledges an officer's good job but is often quick to point out a mistake.  He is a "Do as I say, not as I do" type of individual.  He masks his lack of knowledge by delegating his tasks as a commander to his subordinates. . . . He severely lacks with communication and decision making.  It can sometimes take weeks to receive a response from him, written or verbal.  (Ex. training requests, vacation requests, shift coverage, investigations, evaluations, etc.)  His personal friendships with other command staff members has allowed him to bully and target officers without consequence causing frustration and low morale within the department.

- He does not know how to investigate.

- . . . Lt. Wayne continues to violate policies, exhibit unethical behavior, and refuses to communicate in a professional manner.  He often pulls rank when he is challenged on something instead of discussing how it could have been handled better.  He consistently disregards our core values.  He lacks the integrity needed to run this department in a fair and impartial manner.  He fosters a hostile working environment (ESPECIALLY FOR WOMEN) which creates a number of challenges in WUPD; preventing officers and sergeants from effectively doing their jobs.  Lt. Wayne is a LIAR.  He receives no consequences for his actions or backdoor tactics which in turn creates very poor morale with the officers at this department.  We deserve better Leadership.

- Lt. Wayne hasn't affected me personally, however I have noticed how he is towards others, specifically female officers.  He can come off controlling and domineering.  You shouldn't use your title to control.

- Extremely unprofessional.  Especially when we go to training outside of WUPD and we have to hear what he did when he was in Ballwin.  He is clearly racist and only like[s] certain  white officers. . . . If it was up to him he would only promote all the white officers. . . . What does he do as a patrol LT? SGT Hubbard does more than him.  He needs to go back to

8

> communication classes.  None of the officers like him or respect him.  He doesn't know [h]ow to earn respect. . . .

Ex. S (Dep. Ex. 14).   [WU SUMF, ¶44]

35.    The 360 Degree Performance Appraisal feedback regarding Wayne gave Chief Coonce concern about Wayne's leadership abilities.  Ex. B (Coonce Dep. 32:7-9).  [WU SUMF, ¶45]

36.    During the August 23, 2023 meeting, Chief Coonce also encouraged Wayne to pursue additional education, including his bachelor's degree, so he could qualify for certain law enforcement training programs.  Ex. R (Dep. Ex. 13); Ex. A (Wayne Dep. 72:22-73:25). [WU SUMF, ¶47]

37.    On September 8, 2023, Pelzel met with Nanette Vaughn and Chief Coonce regarding the calls for service that led to the IAD #23-02 and #23-04 investigations.  (Ex. 28 - September 8, 2023 Memo from Chief Coonce (WU-0000402 – WU-0000404)).   [WAYNE SUMF, ¶60]

38.    Chief Coonce memorialized the September 8, 2023 meeting in a contemporaneous memorandum.  Coonce Aff.,¶14; Ex. T (WU-0000402).  [WU SUMF, ¶49]

39.    Chief Coonce understood from the September 8, 2023 meeting that Vaughn's investigations showed

> … [T]here are systemic issues at WUPD.  The supervisors and commanders are not ensuring calls are being handled properly.  No command oversight or accountability – basic law enforcement procedures are not being followed by officers.
>
> ***
>
> . . . WUPD leadership must ensure that the sergeants, lieutenants and captain are more involved in the oversight of calls for service to ensure they are handled properly.  There is a level of complacency in the WUPD command team that is contributing to the lack of sense of urgency in the rank and file.

Ex. T (WU-0000402).   [WU SUMF, ¶50]

40.     With respect to Wayne specifically, Chief Coonce understood that the investigations showed:

> . . .Wayne as taking no accountability for any of the failures on the calls for service in which he was involved . . . . He blamed others and actually said, "those are not my people." This is when he was covering Lt. Hubbard's platoon on afternoons – he was still the commander and was responsible for their oversight. . . . Systemic issues have created a loss of confidence in his ability to provide the supervision needed. Not sure his behavior will change, no accountability. No confidence and recommends written reprimand and final warning.

*Id.* [WU SUMF, ¶51]

41.     Wayne agreed that as a supervisor, whether a subordinate accepts responsibility for a mistake is relevant to the level of discipline imposed. Ex. A (Wayne Dep. 70:15-25). [WU SUMF, ¶83]

42.     Following her meeting with Wayne, in which she issued the Written Reprimand/Final Warning, Chief Coonce described the meeting in an email to HR Consultant Kevin Pelzel:

> I talked about the concerns with both cases which Nannette highlighted during her investigations. It was rather uncomfortable because he did not speak at all, nor did he ask any questions during the entire meeting. During the other meetings [in] the past week with officers involved in the cases, there was a lot of positive discussion. Many officers took ownership over their actions and we discussed what could/should have been done to improve the WUPD response in the future. This meeting certainly did not have the same feel about it, he simply seemed angry.

Ex. W (WU-0000504). [WU SUMF, ¶53]

43.     Following the meeting on September 8, 2023, Pelzel sent an email to Scot Bemis ("Bemis"), Washington University's Vice Chancellor of Human Resources, informing Bemis that Nanette Vaughn completed the investigation of the three (3) prior Police Department IAD cases, while discussing with Chief Coonce three (3) additional IAD cases from the Department. (Ex. 27). [WAYNE SUMF, ¶61]

10

44.     Later the same day, Chief Coonce, per Pelzel's request, provided a summary of an incident that occurred on September 1, 2023, involving a female student that was unconscious and not wearing pants in a building referred to as The Lofts.  (Ex. 29 - September 8, 2023 Email from Angela Coonce to Kevin Pelzel (WU-0000410 – WU-0000412)). [WAYNE SUMF, ¶63]

45.     The September 1, 2023 incident at The Lofts became the subject of IAD #23-07 and involved the investigation of what Chief Coonce believed was the mishandling of another service call.  (Ex. 32 - IAD # 23-07 Personnel Complaint Reports (WU-0000413 – WU-0000416)). [WAYNE SUMF, ¶65]

46.     The Police Officers investigated included Lieutenant Wayne, Captain Goodwin, Officer M.W. and Sergeant C.J.  (Ex. 32).  [WAYNE SUMF, ¶66]

47.     On September 15, 2023, Chief Coonce referred two additional matters to Human Resources for investigation, identified as "IAD 23-07" and "IAD 23-08".  Ex. X (Dep. Ex. 46).  Both matters involved Wayne.  *Id.*  [WU SUMF, ¶56]

48.     In her referral to Human Resources, Chief Coonce described IAD 23-07[2] as:

> [A]nother call for service in which our response was subpar.  On 9/1/23 at 2:14 am, we received a call for service in the lobby of the Lofts for a female student who was unconscious – with no pants on.  The responding officer did not do any type of investigation on this, no CCTV was reviewed to try to determine what happened, they did not go to the hospital to try to interview the student, they merely placed her in an ambulance and wrote a CAD with a few sentences.  The supervisors on this one were Sgt. [redacted], Lt. Wayne and Capt. Goodwin.

*Id.*  [WU SUMF, ¶57]

49.     Wayne's platoon was involved in responding to the call at the Lofts on September 1, 2023, and Wayne forwarded the CAD (computer aided dispatch) regarding the

---

[2] The parties agreed to refer to this matter as the "Lofts Incident" to protect the privacy of the student involved.

call to the University's medical team and "Care Team."  Ex. A (Wayne Dep. 130:16-131:14; 132:22-25).  [WU SUMF, ¶58]

50.    For his part in the IAD # 23-07 investigation, Lieutenant Wayne met with Nanette Vaughn on September 18, 2023.  (Doc. #53-28 (WU-0000528 – WU-0000529)). [WAYNE SUMF, ¶67]

51.    In her referral to Human Resources, Chief Coonce described IAD 23-08 as:

On 10/4/22 I sent Lt. Wayne a directive (documented in a memo) to meet monthly with P.O. [redacted] in response to concerns he brought to me over her sick time usage. He was to use these meetings as coaching sessions.  These meetings never occurred, he never met with P.O. [redacted].  I can provide a lot of documentation for you to review on this one.

Ex. X (Dep. Ex. 46).  [WU SUMF, ¶60]

52.    On September 4, 2023, Captain Goodwin recommended to Chief Coonce that she refer the matter involving Lieutenant Wayne and the patrol officer with the sick time usage issue to Human Resources for investigation.  Ex. AA (Dep. Ex. 34).   [WU SUMF, ¶63]

53.    Nanette Vaughn also investigated the allegations associated with IAD #23-08, in which Lieutenant Wayne allegedly failed to follow a direct order from Chief Coonce.  (Ex. 33 - September 9, 2023 Email from Chief Coonce to Lieutenant Wayne and Attached Personnel Complaint Report Related to IAD #23-08 (WU-0000417 – WU-0000418)). [WAYNE SUMF, ¶69]

54.    Ms. Vaughn interviewed Lieutenant Wayne about the allegations in IAD #23-08 on September 18, 2023. (Doc. #53-28 (WU-0000525 – WU-0000527).  [WAYNE SUMF, ¶71]

55.    The University's Police Department General Order 205.3, regarding Administration of Discipline, requires the Chief of Police to obtain Human Resources

12

approval for her decision to terminate Police Personnel.  (Ex. 26, Police Department General Order 205.3, Section VIII.C).  [WAYNE SUMF, ¶88]

56.    Pursuant to the University Police Department General Order 205.3 (Administration of Discipline), disciplinary actions are subject to appeal and handled pursuant to Police Department General Order 205.5 (Grievance Procedures).  (Ex. 26 - General Order 205.3, Section IX (WU-0000026 – WU-0000032)).  [WAYNE SUMF, ¶54]

57.    Pursuant to University policy, Lieutenant Wayne appealed the University's issuance of his Written Reprimand and Final Written Warning on September 26, 2023.  (Ex. 23 - September 26, 2023 Email to Sara Wright (WU-0000543); Ex. 24 - September 22 Written Appeal (WU-0000536 – WU-0000537); Ex. 25 - Washington University Police Department General Order 205.5 Grievance Procedures (WU-0000033 – WU-0000037)).  [WAYNE SUMF, ¶53]

58.    On September 27, 2023, Chief Coonce met again with Kevin Pelzel and Nanette Vaughn, this time to discuss the investigation of IAD #23-07.  (Doc. #53-34 (WU-0000545 – WU-0000546)).  [WAYNE SUMF, ¶72]

59.    Chief Coonce's understanding of the results of the IAD 23-07 investigation were that:

> . . . Wayne's "complacency" and "lack of sense of urgency" was an issue on calls for service.  He mentioned that WUPD deals "with a lot of drunk students."  He advised there were a lot of intox calls that weekend and was "going building to building" but got calls confused because this came from video and not CAD.
>
> Vaughn stressed Wayne's repeated "lack of oversight" on calls for service and his "unwillingness to accept accountability" in his role as a commander.  She said Wayne does not appear to "critique or question officers handling of calls for service."  He appears to simply "forward information on to the next level without questioning anything."  This has happened several times with errors in CADS and mishandling of calls that he did not correct or raise concerns about.  She feels he is ineffective in his role as a commander at WUPD.

***

Overall assessment – the lack of oversight of the command team is causing systemic issues in the patrol division.  The failures of the leadership team are having a direct impact on the patrol division and resulting in mishandled calls for service.

Exhibit HH (WU-0000546).  [WU SUMF, ¶77]

60.    During that meeting, Chief Coonce expressed to Ms. Vaughn:

. . . I have lost confidence in Wayne and his ability to serve in a leadership position at WUPD.  I advised I did not feel as if I could trust that things are handled correctly when I am not at work – including on nights and weekends during our busiest and most vulnerable times.  I feel that he is putting WUPD and the University at risk because of his unwillingness, or inability to manage calls for service in the patrol division correctly.

*Id.*  [WU SUMF, ¶78]

61.    On September 28, 2023, Chief Coonce sent an email to the Command Staff with the subject line "Expectations – Command Staff," which stated:

We continue to meet and discuss expectations.  It is no secret that Human Resources has been in-house interviewing many officers about how calls have been handled, or mishandled.

As we've discussed many times, there is a level of complacency and a lack of a sense of urgency with many of our officers on calls.  We had our first meeting about this on September 1, 2022, exactly one month into my tenure at WUPD.  This was after the incident at Dr. Bolton's house.  I clearly outlined my expectations for handling incidents.  I talked about the level of complacency and lack of sense of urgency I observed on the response to Dr. Bolton's incident.  We talked about the importance of conducting basic law enforcement investigations during this meeting – unfortunately it has continued.

In many of the calls that HR has been reviewing, they have noted that basic investigations are still not being completed by WUPD. Some examples, a bag that potentially had a firearm was not searched, reports have not been written when items were stolen, stolen items were not entered into NCIC, subjects have not been run for warrants, CCTV has not been reviewed, officers did not go to the hospital with an unconscious student, assumptions were made on calls – this is to name [a] few.

14

In each of these, the mistakes were not found by the WUPD supervisors or commanders. The CADs were "rubber stamped" with no questions asked, later to be discovered by me or members of our community like RSVP or the OGC.   This is not acceptable.

Supervisors and commanders should be critically reviewing each and every call to ensure the officers handled it properly.  Commanders have to ensure that full and thorough investigations were conducted, not just review the CADs or reports for errors.  Supervisors and commanders should be responding to critical calls in person and overseeing the officers investigations to ensure they are done correctly.  You should not be waiting for the officers to call you for help – you must provide oversight.

The expectations of our officers are set and maintained by the commanders.

These points should go without saying:

- You can't rely on your sergeants or corporals to ask the questions that you should be asking – this is your responsibility.
- We must stop this sense of complacency.
- Each call we receive should be treated with a sense of urgency and importance.
- We must complete thorough investigations on each and every call.
- We should treat every victim the exact same way we would like our own family to be treated.

The actions of the WUPD officers reflect directly on the leadership.

Ex. II (WU-0000732).  [WU SUMF, ¶80]

62.     Coonce testified to the reasons she decided to terminate Wayne:

He was terminated because I lost confidence in his ability to lead in the patrol division.  It was really the totality of the circumstances.  There was systematic [sic] issues with his leadership and management.  Certainly not all inclusive.  I think in this letter it was a lack of accountability, mismanagement of calls for service, failure to take accountability.

Ex. B (Coonce Dep. 51:9-16).  [WU SUMF, ¶69]

63.     Coonce testified that the grounds set forth in Wayne's termination letter also described the reasons for his termination, including systemic issues in his leadership, general lack of accountability, a sense of complacency on calls for service, a lack of sense of

15

urgency in and managing the business of the department, and because she had lost confidence in his abilities.  Ex. B (Coonce Dep. 50:3-12; 51:18-52:4); Ex. EE (Dep. Ex. 44).

[WU SUMF, ¶70]

64.    In Lieutenant Wayne's termination letter given to him on October 12, 2023, Chief Coonce wrote the following:

> As you are aware, several investigations have been conducted by WashU Human Resources at the request of WUPD's leadership team. The investigations shed light on a lack of oversight and accountability. WUPD internal affairs cases 23-02 and 23-04 resulted in you being issued a Written Reprimand and Final Warning on September 18, 2023.
>
> Since being issued a final warning, two additional internal cases which you were involved with were initiated for investigation. On September 4, 2023, Captain Goodwin recommended internal affairs case 23-08 (Failure to Follow a Direct Order) be referred to Human Resources for investigation. On September 9, 2023, internal affairs case 23-07, involving the mishandling of a call for service at the Lofts, was also referred to Human Resources for full investigation.

(Ex. 5).  [WAYNE SUMF, ¶77]

65.    Additionally, at the time of Lieutenant Wayne's termination of employment, the appeal of his September 18, 2023 Written Reprimand and Final Warning was still pending.  (Ex. 38 - October 23, 2023 Email from Sara Wright to Lieutenant Wayne (WU-0000891)).  [WAYNE SUMF, ¶79]

66.    Instead of making a final determination about the validity of his appeal, the University deemed it "to be moot" because his employment was terminated before it could do so.  (Ex. 38).  [WAYNE SUMF, ¶80]

## B.  Wayne's Car Accident and Request for FMLA Leave

67.    Wayne did return to work on Monday, September 25, 2023, in accordance with return-to-work instructions from the treating physician.  Ex. LL (Dep. Ex. 30).  [WU SUMF, ¶85]

16

68.     Wayne continued to work through October 10, 2023, and he notified the WUPD on October 11, 2023 that he was beginning FMLA leave.  Ex. NN (WU-0000881); Ex. LL (Dep. Ex. 30).  [WU SUMF, ¶88]

69.     In fact, Chief Coonce notified Kevin Pelzel on October 11, 2023 that Lieutenant Wayne was going off work on full FMLA leave.  (Doc. #53-40 (WU-0000881)). [WAYNE SUMF, ¶83]

70.     Wayne testified as follows in his deposition:

"Q: Okay. With respect to the FMLA, are you – you have a count here where you claim that you believe that you were discriminated against because you attempted to exert – assert your rights under the FMLA; is that fair?

 A: I don't think I was discriminated against about the FMLA."

Ex. A (Wayne Dep. 154:25-155-6).  [WU SUMF, ¶89]

71.     Wayne further testified in his deposition:

"Q: All right. Do you have any information or evidence that your termination was the result of your applying for FMLA?

A: No.

Q: Do you believe your termination was the result of applying for FMLA?

A: No.

Q: So you believe that even if you had not applied for FMLA, you would have been terminated?

A: Yes."

Ex. A (Wayne Dep. 157:14-23).  [WU SUMF, ¶90]

Respectfully submitted,

**THE HESSE GROUP, LLC**          **HAAR & WOODS, LLP**


/s/ Willie T. McGarry            /s/ Robert T. Haar
Daniel J. Doetzel - #46788MO     Robert T. Haar - #30044MO
Willie T. McGarry - #68244MO     Lisa A. Pake - #39397MO
13354 Manchester Road, Suite 210 Margaret N. Kuhlman - #42928MO
St. Louis, MO 63131              1010 Market Street, Suite 1620
(314) 480-3937 (Telephone)       St. Louis, MO 63101
(314)480-3938  (Facsimile)       (314) 241-2224 (Telephone)
dandoetzel@hgstl.com             (314) 241-2227 (Facsimile)
williemcgarry@hgstl.com          roberthaar@haar-woods.com
                                 lpake@haar-woods.com
*Attorneys for Plaintiff*         pkuhlman@haar-woods.com

                                 *Attorneys for Defendant*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 5th day of August, 2026, a true copy of ***Joint Motion of Undisputed Facts***, was filed electronically with the Clerk of the Court to be served by operation of the CM/ECF system upon all counsel of record.


                                 /s/ Robert T. Haar