**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| ROBERT WAYNE,<br><br>*Plaintiff*,<br><br>v.<br><br>THE WASHINGTON UNIVERSITY,<br><br>*Defendant*. | ) | No. 4:24-cv-01723-JMD |

**ORDER GRANTING IN PART AND DENYING IN PART WASHINGTON UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT**

Robert Wayne alleges that his former employer, Washington University, violated federal and state employment and labor laws when the university fired him from his post as a campus police officer. The university is entitled to summary judgment on his claims about age discrimination, sex discrimination, and retaliation. The university says it fired Wayne because several investigations revealed substandard practices by Wayne or the officers he supervised. Wayne says that justification was pretextual, but the evidence of pretext he submits concerns employees who were not similarly situated to him; they all held lower-ranking positions. As to retaliation, Wayne says the university fired him because he complained about the chief of police engaging in discrimination. He relies on the idea that a close temporal connection between making a complaint and being fired is sufficient to infer a causal relationship. But he provides no evidence of any complaint closer than two months before being fired, and the Eighth Circuit has ruled that a two-month gap is too long to infer causation.

In contrast, Wayne's claim under the Family Medical Leave Act survives summary judgment. The university fired him one day after learning he was taking leave. Although

the university had already decided to terminate him weeks before, there is a genuine issue for trial about whether the university accelerated the termination date in response to his taking medical leave.

**Background**

The Court relies primarily on the parties' Joint Motion of Undisputed Facts, ECF 80. Plaintiff Robert Wayne is a former police officer of the Washington University Police Department. At the time of his termination on October 12, 2023, his rank was Lieutenant, a high-level position within the department. About a year before Wayne's termination, a new Chief of Police, Angela Coonce, joined the department.

In the months leading to Wayne's termination, Coonce expressed concern that Wayne was unprepared on the job, received negative feedback from others, and had failed to supervise other officers adequately. In August 2023, Wayne was verbally counseled for being unprepared for roll call on one occasion and entirely failing to show up another time. That same month, Coonce met with Wayne for a performance review. During that meeting, Coonce discussed anonymous feedback she received about Wayne through a department survey. The feedback criticized his leadership, with one commenter stating that he "should not be in any management position." ECF 80 ¶ 34. Around the same time, the department launched four investigations into incidents involving Wayne and officers he supervised.

The first two investigations were for events that occurred in August. During a police service call on August 9, 2023, Wayne and officers under his supervision allegedly failed to identify a student on campus who had violated a restraining order and had an outstanding warrant for his arrest. And during a service call on August 16, 2023, officers under Wayne's supervision responded to a chronic trespasser but allegedly let the trespasser leave campus without contact. Coonce opened formal investigations into these two incidents—referenced by the parties as IAD #23-02 and #23-04, respectively—and on August 17, 2023, referred

them to the university's human resources office, which is tasked with conducting those investigations.

A few weeks later, Coonce met with personnel from the human resources office to discuss the result of their investigation. Coonce says she understood from the September 8, 2023 meeting that the investigations showed "systemic issues at [the department]" and revealed "a level of complacency in the [department's] command team that is contributing to the lack of sense of urgency in the rank and file." ECF 80 ¶ 39. Coonce testifies that she lost confidence in Wayne's ability to lead. *Id.* ¶ 40. On September 18, 2023, she issued a "Written Reprimand and Final Warning" to Wayne. Wayne appealed that reprimand on September 26, 2023.

Coonce referred the third investigation on September 15, 2023. The third investigation (IAD #23-07) involved a service call on September 1, 2023. Officers under Wayne's supervision responded to a call concerning a female student who was unconscious and not wearing pants. Coonce says she referred the incident for investigation because she believed the officers failed to conduct any investigation; they simply sent the student to the hospital. Shortly after, Coonce met with human resources personnel to discuss the result of that investigation. Coonce says she understood from the investigation that Wayne had a "complacency" issue and that his "lack of oversight" was creating "systemic issues in the patrol division." *Id.* ¶ 59.

The fourth investigation (IAD #23-08), also referred on September 15, 2023, involved an order Coonce had issued to Wayne nearly a year before on October 4, 2022, to conduct monthly coaching sessions with a lower-ranked officer. Wayne allegedly never conducted any of those sessions. According to the university, Coonce met with a human resources officer about the results of this investigation, and the human resources officer reported that Wayne appeared not to "have even a basic understanding" of an employee-management procedure,

"appear[ed] to lack basic management/leadership skills needed for his position," and was "creating systemic issues in patrol [and] contributing to a toxic culture." ECF 62-18 at 1.

The parties disagree about when in September the university decided to fire Wayne, but both agree the university delayed notifying Wayne of his termination until October. Wayne says the university made its decision on September 8, the day Coonce discussed the first two investigations with human resources personnel. The university says the date was September 21. On that day, Wayne was in a car accident. He returned to work on September 25 and continued to work through October 10, 2023. On October 11, 2023, Wayne notified the department that he was going on medical leave, which Coonce relayed to human resources personnel. Wayne says Coonce promptly emailed him informing him of a mandatory meeting the next day to discuss the internal investigations. He says he received his termination letter at that meeting, on October 12, 2023. In the letter, Coonce justified the termination by citing the reprimand issued for the first two investigations, and she also cited the third and fourth investigations. ECF 71-4 at 1. The letter stated that the "above investigations have revealed systemic issues in your leadership." *Id.* Washington University declined to make a final determination on Wayne's appeal of his reprimand, deeming it mooted by his termination.

Wayne sues Washington University under the Age Discrimination in Employment Act, Title VII, and the Missouri Human Rights Act, alleging that the university engaged in unlawful age and sex discrimination and retaliation when it terminated him. He also sues under the Family Medical Leave Act, alleging that Washington University unlawfully interfered with his rights and retaliated against his taking leave.

**Standard**

The Court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). In evaluating Washington University's motion for summary judgment, the Court "view[s] the evidence and draws all justifiable inferences in favor of the nonmoving party." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1134 (8th Cir. 1999) (en banc). The nonmovant, Wayne, must offer "specific facts showing that there is a genuine issue for trial," and not just "show that there is some metaphysical doubt as to the material facts." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

## Analysis

### I. Age and Sex Discrimination

Wayne alleges that Washington University discriminated against him because of his age and sex when it terminated him. Because he offers no direct evidence of discrimination, Wayne's age and sex discrimination claims are assessed under the three-step, burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Rahlf v. Mo-Tech Corp., Inc.*, 642 F.3d 633, 637 (8th Cir. 2011) (analyzing an age-discrimination claim under that framework);[1] *Gibson v. Concrete Equip. Co., Inc.*, 960 F.3d 1057, 1062 (8th Cir. 2020) (same for Title VII sex-discrimination claim); *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 964–65 (8th Cir. 2006) (same for age-discrimination claims under Missouri state law); *Boston v. TrialCard, Inc.*, 75 F.4th 861, 867 (8th Cir. 2023) (same for sex-discrimination claims under Missouri state law). Under the *McDonnell Douglas* framework, the employee must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. This shifts the burden to the employer

[1] The Eighth Circuit has stated that a higher standard may be applicable for age-discrimination claims because the relevant law has a "but-for" standard of causation instead of the "mixed motives standard used in other statutes." *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 794–95 (8th Cir. 2019). The Court nonetheless applies the lower standard because Wayne cannot satisfy it, and "a plaintiff who fails to meet the lower standard . . . necessarily fails to meet the [higher] standard as well." *Id.*

to articulate a legitimate, nondiscriminatory reason for the termination. *Id.* Then, the burden shifts back to the employee to establish that the employer's articulated reason is pretext for unlawful discrimination. *Id.* at 804.

Wayne's claim fails. Even assuming Wayne can establish a prima facie case of discrimination,[2] Washington University has articulated legitimate, nondiscriminatory reasons for the termination, and Wayne's proffered rebuttals of those reasons do not create genuine issues of fact for trial.

Washington University submits that it terminated Wayne because of his failure to meet legitimate job expectations and failure to take accountability for his underlying performance issues. The burden of offering a legitimate, nondiscriminatory reason for the termination "is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Torgerson*, 643 F.3d at 1047 (quoting *Floyd v. Mo. Dep't of Soc. Servs., Div. of Fam. Servs.*, 188 F.3d 932, 936 (8th Cir. 1999)). Because the Court does not "sit as [a] super-personnel department[] reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination," *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995), there need only be a "good faith" basis for Washington University's decision to terminate Wayne,

---

[2] In the Eighth Circuit, an employee can establish a prima facie case of discrimination by establishing (1) he belongs to a protected class; (2) he was meeting his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *See, e.g.*, *Gibson*, 960 F.3d at 1062.

Citing the internal investigations, the university argues that Wayne was not meeting the university's legitimate job expectations. There is "tension in [the Eighth] [C]ircuit's jurisprudence regarding whether a court may consider an employer's reasons for discharging an employee when considering the qualified element of the prima facie case." *Elam v. Regions Fin. Corp.*, 601 F.3d 873, 879 n.4 (8th Cir. 2010). Some cases have said courts must set aside the employer's stated reason for the termination and ask if the employee was "*otherwise* meeting expectations." *Id.* (emphasis in original; citation omitted). Others have suggested otherwise. *Id.* The parties do not provide enough analysis to resolve this issue.

*see Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 955 (8th Cir. 2012). Both a failure to meet legitimate job expectations and a lack of accountability are legitimate, nondiscriminatory reasons for terminating Wayne. The internal investigations and Wayne's performance issues provide a good faith basis for them.

Wayne contends otherwise, noting that he received a positive performance appraisal in 2023, which Coonce signed in August 2023. But, as Wayne acknowledges, that performance appraisal reflected only "Wayne's January through December 2022 performance." ECF 66 at 5. "Prior evaluations 'may show that [Wayne] had performed competently in the past, but they do not render [his] more recent negative evaluations inherently untrustworthy.'" *Doucette v. Morrison Cnty., Minn.*, 763 F.3d 978, 983 (8th Cir. 2014) (quoting *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998)).

Wayne has not established that Washington University's proffered reasons are pretextual. To clear that hurdle, he must "present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." *Winters v. Deere & Co.*, 63 F.4th 685, 690 (8th Cir. 2023) (citation omitted). Wayne articulates several theories. None suffice.

**A. Comparisons to Similarly Situated Individuals**

Wayne tries to establish pretext by comparing himself to individuals who purportedly were treated more favorably. An employee may establish pretext "by showing that an employer . . . treated similarly-situated employees in a disparate manner." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010). As to age discrimination, Wayne argues that several younger officers involved in the first two incidents investigated were disciplined less severely. As to sex discrimination, Wayne argues that Washington University declined to hear his appeal of the reprimand he received even though the university made a final decision about an appeal lodged by a female officer.

Wayne's argument fails because none of these other employees was similarly situated. To establish pretext, the comparator individuals must be "similarly situated in all relevant respects" other than the protected characteristic, "a rigorous standard at the pretext stage." *Torgerson*, 643 F.3d at 1051 (cleaned up). "[T]he employees used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1126 (8th Cir. 2017) (cleaned up). Wayne does not satisfy this standard.

As to age discrimination, Wayne identifies five officers who received less-severe discipline. But Wayne has not established that any of them were of a similar rank. Indeed, all five appear to have been lower ranked. *See* ECF 78 at 7 (noting the comparators "all held positions of lower rank"). That matters because Coonce explicitly said she was terminating Wayne because of a loss of confidence in his leadership abilities. Further, two of the officers were around the same age as Wayne—Corporal R.F. was "mid to late 50s" and Officer D.M. was "late 50s." ECF 66 at 7. Wayne was 56 or 57. ECF 80 ¶ 10. The lesser discipline inflicted on two officers around the same age as Wayne suggests that the greater discipline inflicted on Wayne was *not* due to age discrimination. These comparators do not create a triable issue of fact on whether Washington University's proffered reasons for terminating Wayne were a pretext for age discrimination.

The comparator Wayne provides for sex discrimination is also dissimilar. Wayne contends that Washington University resolved a disciplinary appeal sought by a younger female officer but did not resolve his appeal. But the female officer was not comparable in rank to Wayne—indeed, she was subordinate to Wayne and was disciplined by Wayne. Her alleged misconduct was different as well: misuse of sick leave, not mishandled service calls. Moreover, Wayne offers no evidence that the university decided the female officer's appeal;

he cites only her *request* for an appeal. *See* ECF 66 at 8 (citing ECF 68 ¶ 70, which cites ECF 72-18). Wayne thus has not satisfied his burden at summary judgment of "submitting evidentiary materials of specific facts." *Bedford v. Doe*, 880 F.3d 993, 996–97 (8th Cir. 2018) (cleaned up).

**B. Deviation from Grievance Procedures**

No better is Wayne's argument that Washington University deviated from its own grievance procedures when it declined to resolve his appeal of the reprimand order. True, an employee in some circumstances may establish pretext "by showing that an employer . . . failed to follow its own policies." *Lake*, 596 F.3d at 874. But an employer's failure to follow its own policies does not necessarily lead to an inference of pretext. "[A] shortcoming in an internal investigation alone, without additional evidence of pretext, would not suffice to support an inference of discrimination on the part of the employer." *Edwards*, 860 F.3d at 1127 (citation omitted); *see also id.* at 1126–27 ("Evidence showing an employer has failed to follow its own policies may indicate pretext, yet '[a]n employer can certainly choose how to run its business, including not to follow its own personnel policies regarding termination of an employee . . . as long as it does not unlawfully discriminate in doing so.'" (quoting *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 904 (8th Cir. 2015) (cleaned up)). "Even if the employer's acts are unfair, there has to be evidence connecting the unfairness to a discriminatory animus." *Schaffhauser*, 794 F.3d at 904.

Wayne fails to provide the additional necessary evidence. Even assuming Washington University unfairly deviated from its own grievance procedure, Wayne has not connected the deviation to discriminatory animus. Washington University justified its decision not to decide Wayne's appeal on the ground that it became moot because of his termination. The only evidence Wayne supplies to infer pretext beyond the alleged deviation from grievance procedures is that the university chose not to deviate from those procedures with respect to

his subordinate, female officer. But as discussed above, that officer was not similarly situated and Wayne offers no evidence that her appeal was even decided.

**C. Sham Investigations**

Wayne also contends that Washington University decided to terminate him on September 8, 2023, before the first two investigations had concluded and before the second two had been referred. According to Wayne, that is proof of pretext because the university cited those investigations as grounds for his termination in his October 12 termination letter. But the third step of *McDonnell Douglas* requires establishing that the employer's proffered reason for termination was pretext *for discrimination*. Even if the decision to terminate Wayne was pretextual in general, Wayne has failed to provide evidence that the termination was because of age or sex discrimination instead of some other reason. *See Hutson*, 63 F.3d at 777 ("[P]roof that the defendant's articulated explanation is false or incorrect does not, standing alone, entitle the plaintiff to judgment; instead, the showing must be that the explanation is a pretext *for* discrimination." (citations omitted)).

**II. Retaliation**

Wayne also alleges that Washington University fired him in retaliation for his complaints to various human resources representatives about Coonce's behavior. That claim also fails. In the absence of direct evidence, retaliation, like discrimination, is evaluated under the *McDonnell Douglas* burden-shifting framework. *See, e.g.*, *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 713–14 (8th Cir. 2000) (applying *McDonnell Douglas* to retaliation claims under Title VII and Missouri law); *Pilot v. Duffy*, 143 F.4th 924, 928 (8th Cir. 2025) (same for retaliation under age-discrimination law). First, the employee must establish a prima facie case of retaliation. *Gibson*, 960 F.3d at 1064. Then, the employer must offer a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Finally, the employee must rebut the nondiscriminatory reason by establishing that it is

pretext for retaliation. *Id.* The evidentiary burden for establishing causation is higher for a plaintiff at the final stage of the burden-shifting framework. *Stewart v. Ind. Sch. Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007). Even assuming Wayne can establish a prima facie case of retaliation,[3] the evidence he proffers for a causal relationship between his protected activities and his termination is insufficient to create a triable issue of fact.

In his brief, Wayne contends that he complained to human resources personnel several times about Coonce discriminating: first on June 2, 2023, when human resources personnel interviewed him as part of an investigation into Coonce; second on August 23, 2023, when human resources personnel interviewed him while conducting the first two investigations; and third on October 4, 2023, when another human resources employee discussed his appeal of his reprimand. Wayne chose not to include other potential complaints in his brief, so the Court does not consider them. *See Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006) ("Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments.").

Assuming, as Wayne contends, that Coonce knew about his complaints because she was in contact with the relevant human resources employees, Wayne faces a high hurdle because his argument relies on the temporal proximity between his complaints and the investigations against him. "[T]emporal evidence should generally be corroborated by other evidence of employment discrimination," although corroboration may not be needed if the

---

[3] To establish a prima facie case of retaliation, the employee must prove (1) he engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal connection existed between his participation in the protected activity and the adverse employment action. *Gibson*, 960 F.3d at 1064. The Court assumes without deciding that Wayne has established a prima case for his retaliation claims, and "move[s] directly to the issue of pretext and the *determinative issue of causation*" because "bypassing the prima facie case analysis leads to clarity in faming the issues under review." *Stewart*, 481 F.3d at 1043 (emphasis added).

proximity between the protected activity and the adverse employment action is "very close." *Lightner v. Catalent CTS (Kan. City), LLC*, 89 F.4th 648, 656 (8th Cir. 2023) (cleaned up); *cf. Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close' . . . ." (collecting cases) (cleaned up)). Moreover, because "unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification," *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 111 (8th Cir. 2001), Wayne must offer evidence tending to rebut Washington University's proffered legitimate, nondiscriminatory reasons for terminating him—namely, the findings from the investigations against him. *See also Kneibert v. Thomson Newspapers, Mich. Inc.*, 129 F.3d 444, 455 (8th Cir. 1997) ("Simply filing a discrimination charge does not clothe the complainant with immunity for past and present inadequacies, [and] unsatisfactory performance . . . ." (cleaned up)).

Here, Wayne cannot rely on temporal proximity to establish a sufficient causal connection between his complaints and his termination to suggest his termination was pretext for retaliation. His first complaint was on June 2, 2023, more than three months before the termination decision and more than two months before the investigations launched against him. "More than two months is too long to support a finding of causation without something more." *See Lors v. Dean*, 746 F.3d 857, 866 (8th Cir. 2014) (cleaned up); *see also Allen v. Missouri*, No. 4:11-cv-2224-JAR, 2013 WL 2156259, at *9 (E.D. Mo. May 17, 2013) ("Although the Eighth Circuit has not set out a definitive time frame, it has held that two months is too long to support a finding of causation without something more."). Wayne fails to provide "something more."

The last complaint—on October 4—is closer in time, but cannot have caused Wayne's termination. The parties disagree about when the university decided to terminate Wayne, but they agree the decision occurred in September, before Wayne made the last complaint. "[A]lleged retaliation which precedes protected conduct cannot logically be used to show causation because a prior event cannot be caused by a later event." *Stewart*, 481 F.3d at 1044.

Only Wayne's second complaint—August 23—is temporally relevant. But Wayne presents no evidence suggesting he and human resources personnel in fact discussed discrimination by Coonce. In his brief, Wayne says he complained about Coonce. ECF 66 at 14. But the only thing he cites in support are notes from the August 23 meeting. *Id.* (citing ECF 68 ¶ 43, which cites ECF 72-6). And those notes never mention any complaints from Wayne. After the university moved for summary judgment, Wayne had an obligation to "respond by submitting evidentiary materials of specific facts." *Bedford*, 880 F.3d at 996–97 (cleaned up). He failed to provide any evidence supporting his contention, and his "mere allegations" in his brief, "unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Jones v. Wellpath, LLC*, 77 F.4th 658, 663 (8th Cir. 2023) (cleaned up).

### III. Family Medical Leave Act

Wayne does have a claim that survives summary judgment: his claim that Washington University interfered with his rights under the Family Medical Leave Act and retaliated against him for taking leave.

Washington University presses two arguments in its summary judgment motion: first, that Wayne testified in his deposition that he does not believe his request for leave caused influenced the termination decision; and second, that the termination decision was made before his request for leave. But even if his request for leave did not alter the *fact* of

termination, Washington University does nothing to rebut Wayne's argument that the request affected the *timing* of termination. Under Wayne's theory, the university was "forced to hurry" the termination in light of his request for leave. ECF 66 at 17. Here, there is a triable issue of fact as to whether the university decided the termination would be effective October 12 specifically because of his request for leave. *See Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002) (finding a two-week gap between beginning leave and termination was sufficient to establish prima facie case of retaliation under the Family Medical Leave Act); *cf. Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 963 (8th Cir. 2012) ("[W]here the termination occurred less than forty-eight hours after notice of the protected activity was given, the timing of the two events could support the jury's finding of discrimination."). The Court denies summary judgment on this Count.

**Conclusion**

Wayne raises no genuine and material issues for trial that Washington University discriminated or retaliated against him. But he does raise genuine issues for trial on whether Washington University violated his rights under the Family Medical Leave Act.

**IT IS HEREBY ORDERED** that the Court **GRANTS** Washington University's motion for summary judgment, ECF 50, on Counts I, III, IV, VI, VIII, IX, and XII, and **DENIES** Washington University's motion for summary judgment on Count VII.

Dated this 8th day of September, 2026

Joshua Divine

JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE
FOR THE EASTERN AND WESTERN
DISTRICTS OF MISSOURI